Cristina PENA, Plaintiff,

v.

HOME DEPOT U.S.A., INC., Defendant.

Civil No. B–12–193.

United States District Court, S.D. Texas, Brownsville Division.

Signed Oct. 17, 2013.

Peter Michael Zavaletta, The Zavaletta Law Firm, Brownsville, TX, for Plaintiff.

Arthur K. Smith, III, Law Offices of Arthur K. Smith PC, 507 Prestige Circle Allen, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANDREW S. HANEN, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff's Premises Liability Claim and Brief in Support Thereof. [Doc. No. 27]. Plaintiff filed a response to Defendant's Motion, [Doc. No. 30], and Defendant subsequently filed a reply to Plaintiff's Response, [Doc. No. 32].

Having considered the Parties' motions, the summary judgment record, and the applicable law, this Court GRANTS Defendant's Motion for Summary Judgment. The reasons are set out below.

## I. BACKGROUND

This case arises out of an incident that occurred on November 23, 2009, whereby the Plaintiff, Cristina Pena (hereinafter "Pena" or "Plaintiff"), slipped and fell on a liquid substance while shopping at a Home Depot U.S.A. (hereinafter "Home Depot" or "Defendant") store owned and/or operated by Defendant in Brownsville, Texas. [Doc. No. 1, Ex. B–2 at 2]. Plaintiff alleges that she was pushing her shopping cart down Aisle 46 when suddenly her right leg went underneath the cart and her left leg went behind her. [Id.]. She landed on her left knee and lost her balance, falling backwards onto her tailbone. [Id.]. Two other customers who were shopping in the same aisle witnessed the fall. One man left to ask for help, while the other man stayed with Pena. According to Plaintiff, the man who stayed with her stated, "oh honey, there·is a spill on the floor." [Id. at 2–3]. Pena then realized that she was lying in a "wet and greasy substance" that appeared to be oil. [Id. at 3].[1]

1. At various times throughout deposition, Plaintiff described the color of the unknown substance as "sort of like dark—dark and gray," "like gray and black," "oily," and "pretty much" the same shade of gray as the floor at Home Depot. [See Doc. No. 31 at 12, 53, 55]. As for the size of the substance, Plaintiff testified that it covered "maybe about

The manager eventually arrived and summoned an employee to clean up the spill. Plaintiff later testified that the employee was not in the area, but that "he must have been close [by] because he came very quickly." [*Id.* at 17]. Pena does not know how the substance got on the floor, how long the substance had been on the floor, or whether any Home Depot employee knew that something was on the floor prior to her fall. [Doc. No. 31 at 13].

Plaintiff filed an action in Cameron County Court at Law No. 3, seeking to hold Defendant liable for her injuries on the basis of premises liability. [*See* Doc. No. 1, Ex. B–2]. Defendant subsequently removed the action to this Court based upon this Court's diversity jurisdiction. [*See* Doc. No. 1].

Home Depot moves for summary judgment on the basis that Pena has failed to raise a fact issue on at least one essential element of her premises liability claim: that Defendant knew or should have known of the substance that allegedly caused Plaintiff to slip and fall. According to Defendant, there is no evidence—or, alternatively, Plaintiff has not produced sufficient evidence to raise a fact issue—that the substance had been on the floor long enough to provide Home Depot with an opportunity to discover the dangerous condition. [*See* Doc. No. 27; *see also* Doc. No. 32]. In support of its motion, Defendant includes deposition excerpts in which Pena states that she does not know how the substance got on the floor, how long the substance had been on the floor, or whether any Home Depot employee knew that something was on the floor prior to her fall. [*See* Doc. No. 27, Ex. 2 at 3].[2]

Pena responds that the evidence, when considered together, raises a genuine issue of material fact regarding Defendant's constructive notice of the hazardous condition posed by the substance. In support of the notice element, Pena offers the following evidence and draws the following conclusions: (1) a Home Depot employee arrived quickly once called by the manager to clean up the spill, and was thus in proximity to the spill; (2) the substance was conspicuous because it encompassed a large area; (3) Defendant failed to produce doc-

---

9 inches and then—and then a[sic] little drops," which were going away from where Plaintiff fell "about 7 to 8 feet." [*Id.* at 13]. According to Plaintiff, the substance did not have a smell, and she has "never been able to determine what the substance was," nor has anyone ever told her what it was. [*Id.* at 55]. The closest Plaintiff came to identifying the substance was stating that "it was something very oily," which she knew to be the case because the employee cleaning it up "had a whole bunch of paper" and "he wiped it and wiped it and wiped it and ... he tried and tried and he couldn't get it off the floor.... And it was thick." [*Id.* at 12].

**2.** Defendant's Motion includes several errors, including a citation to "[e]xcerpts from the deposition of Adela Cerda." [*See* Doc. No. 27 at 4]. Counsel also discusses inapplicable facts (from apparently a different premises liability case) at various times throughout its Motion. For instance, Defendant alleges that Plaintiff "has not adduced any evidence that Home Depot either created or had any actual or constructive knowledge of *the water on the bathroom floor* that allegedly caused Plaintiff to fall." [*Id.* at 7 (emphasis added) ]. Defendant also argues that "Plaintiff has produced no evidence *as to how long the grate had been missing prior to the incident* .... Therefore, Plaintiff's failure to produce any evidence to establish constructive notice necessarily means that Plaintiff has [sic] cannot meet *his* burden to establish a genuine issue of material fact as to constructive notice." [*Id.* (emphasis added) ]. While careless, it does not destroy the integrity of Defendant's Motion. Although Counsel provided in the appendix the correct deposition excerpts from the correct plaintiff in this case, and elsewhere discussed the appropriate facts pertaining to this case, Counsel would be wise to accurately state the relevant facts and parties consistently throughout his briefings.

umentation, such as employee walkthrough or inspection logs, regarding the condition of the aisle where Plaintiff fell during the 2.5 hours prior to the fall, indicating that the aisle went unobserved for 2.5 hours; (4) the "oily substance" was dark and gray, suggesting that it been on the floor long enough to accumulate dirt; and (5) the substance was very difficult to remove, suggesting that it had been there long enough to permeate the floor. [*See* Doc. No. 30 at 3–5].

## II. APPLICABLE LAW

### A. The Summary Judgment Standard

Under federal law, summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir.2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the burden of proof lies with the nonmoving party, the movant may either (1) submit evidence that negates the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports the essential element or claim. *Celotex*, 477 U.S. at 330, 106 S.Ct. 2548. (Here, the Defendant has done both.) When the movant has met its burden under Rule 56(c), the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v.*

*Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir.1994). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 requires the court to grant summary judgment, "after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### B. Premises Liability

Under Texas law, a property owner owes an invitee a duty to protect the invitee from dangerous conditions that are known or reasonably discoverable. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000). The property owner is not, however, an insurer of the invitee's safety. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998); *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex.2002). A plaintiff asserting a claim for premises liability must prove that: (1) the owner or occupier had actual or constructive knowledge of a condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiffs injury. *CMH Homes*, 15 S.W.3d at 99; *see also Corbin v. Safeway Stores, Inc.*,

648 S.W.2d 292 (Tex.1983) (laying out the foregoing elements of a premises liability claim, which several courts now term the "four *Corbin* elements"). Here, the Parties only dispute the first of these four elements, that is, Defendant's actual or constructive knowledge of the hazard posed by the liquid substance on the floor.

To prove that Home Depot had actual or constructive knowledge, Pena would have to show at trial that: (1) Defendant created the hazardous condition by placing the substance on the floor; (2) Defendant actually knew that the substance was on the floor; or (3) the substance was on the floor long enough to give Defendant a reasonable opportunity to discover and remove it. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex.1992). Knowledge is a critical element of premises liability claims, and the Supreme Court of Texas has gone so far to hold that even when the hazardous condition is created by the premises owner, the plaintiff must still prove actual or constructive knowledge. *See id.* ("The fact that the owner or occupier of a premises created a condition that posed an unreasonable risk of harm may support an *inference* of knowledge," however, the "jury must still find actual or constructive knowledge on the part of the owner or occupier.... Making the inference as a matter of law is improper unless knowledge is uncontroverted.").

Defendant moves for summary judgment on the basis that Plaintiff has not adduced evidence of any of the foregoing three theories to prove knowledge. Pena concedes that there is no evidence that Defendant created or actually knew of the hazardous condition posed by the substance on the floor. Instead, she argues that there is sufficient evidence to support a finding that Defendant had constructive knowledge under the third theory.

To establish the property owner's constructive knowledge of a hazardous condition, a plaintiff must show that the hazardous condition existed for some definite length of time. *Reece*, 81 S.W.3d at 815. Texas courts adopted this "time-notice" rule because "temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Id.* at 816. The Supreme Court in *Reece* held that evidence of an employee's proximity to a hazard, with no evidence suggesting how long the hazard had existed, indicates only that it was *possible* for the owner of the premises to discover the dangerous condition, not that the owner reasonably *should* have discovered it. *Id.* ("Constructive notice demands a more extensive inquiry.") The Court went on to hold that "without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Id.* What constitutes a reasonable time for discovery of the condition will vary depending on the facts and circumstances of each case, and proximity evidence will usually be relevant to the analysis. *Id.* (stating hypothetically that if the dangerous condition is conspicuous, then an employee's proximity to the condition may shorten the time in which the factfinder could find that the premises owner should reasonably have discovered it). Thus, when determining whether a defendant can be held to have had constructive knowledge of a hazardous condition, the court must consider evidence of (1) proximity, (2) conspicuity, and (3) longevity. *See id.* at 815–17; *see also Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex.2006).

## III. DISCUSSION

### A. Constructive Knowledge

Home Depot argues that Pena has failed to produce sufficient evidence of the

knowledge element of her premises liability claim to survive summary judgment.[3] Specifically, Defendant contends that Plaintiff's evidence as to the proximity, conspicuity, and longevity prongs of constructive knowledge does not raise a fact issue. Since Pena concedes that there is no evidence that Home Depot actually knew of the substance on the floor or that Defendant caused the substance to be on the floor, the only issue on summary judgment is Defendant's constructive knowledge.

### 1. Evidence of Proximity

■ As evidence of proximity, Pena offers her testimony that an employee "must have been close [by] because he came very quickly" upon being called by the manager to clean up the spilled substance after Plaintiff fell. [Doc. No. 31 at 17]. Specifically, when asked during her deposition whether the employee was "in the area," Plaintiff responded: "No. He must have been close because he came very quickly." [*Id.* (emphasis added)]. Additional testimony revealed that the employee who arrived to clean up only did so after another customer had retrieved the manager, and after the manager had arrived at the scene, questioned Plaintiff, and helped her up from the floor. [*See id.* at 14–15, 17–18, 69–70, 74–76; *see also* Doc. No. 1, Ex. B–2 at 2–3]. Lastly, Pena testified that she does not recall whether any employees were in the aisle before her fall. [*Id.* at 18].

Plaintiff's argument that an employee must have been proximate to the spill merely because he arrived quickly when summoned by the manager—who was also not present in the aisle before or during the fall and had to be brought over by another customer—is unsubstantiated speculation. There is no evidence that a Home Depot employee was in proximity to the hazardous condition *before* Plaintiff fell or at the time of the fall. To the contrary, Pena testified that she does not recall seeing any employee in the aisle before or during her fall. At most, Plaintiff provides evidence that an employee was proximate to the spilled substance *after* Pena fell and help was summoned.

Texas courts have held that an employee's proximity to the hazard *before and during* the plaintiff's fall, without evidence of when or how the hazard came to be on the floor, provides no basis upon which a factfinder can assess the opportunity the store owner had to discover the hazardous condition. In *Reece,* an employee had walked right past the snack bar area where the plaintiff fell, but failed to notice the liquid on the floor. 81 S.W.3d at 814. The same employee was only 5 to 8 feet from the plaintiff when she fell. The manager subsequently admitted that self-service drink and ice machines increased the risk of spillage in the area, and acknowledged the store's policy requiring employees to intervene whenever passing a hazardous condition anywhere in the store. Nevertheless, despite this evidence, the court refused to impute knowledge on Wal–Mart because there was no evidence indicating how the liquid came to be on the floor or how long it had been there before the plaintiff fell. *See Id.* at 816. The court held that an employee's proximity to the hazard was merely evidence that it was *possible* for Wal–Mart to discover the condition, not that Wal–Mart reasonably *should* have discovered it. *Id.; See also Wal–Mart Stores, Inc. v. Spates,* 186

---

**3.** Neither Party, at least for purposes of this Motion, disputes the remaining three elements of a premises liability claim; therefore, this Court confines its discussion to the first element only, that is, whether there is sufficient evidence of knowledge on the part of Defendant that raises a genuine issue for trial.

S.W.3d 566, 568 (Tex.2006) (holding on summary judgment that evidence that a hazard existed for at least 30–45 seconds and that an employee was standing within 3–5 feet of the hazardous condition was not sufficient for constructive notice); *H.E.B. Foods, Inc. v. Moore,* 599 S.W.2d 126, 129 (Tex.Civ.App.-Corpus Christi 1980, no writ) (holding that the fact that an employee was in the immediate vicinity when plaintiff fell is not sufficient to raise an inference that the premises owner should have discovered the hazard); *Furr's, Inc. v. Sigala,* 608 S.W.2d 789, 790 (Tex.App.-El Paso 1980, no writ) (holding that the mere fact that an employee was in the same aisle when and where the accident occurred is not sufficient to prove constructive notice); *Wal–Mart Stores, Inc. v. Rosa,* 52 S.W.3d 842, 844 (Tex.App.-San Antonio 2001, pet. denied) (holding that the proximity of three employees to the area where plaintiff fell before plaintiff slipped on a banana did not tend to prove how long the condition had existed for purposes of charging constructive notice).

Notably, every court that has considered whether the proximity of an employee to a hazardous condition could raise a factual issue as to constructive knowledge was faced with evidence showing the proximity of the employee before and/or during the fall rather than after the fall. Even those courts found the evidence to be insufficient. If proximity evidence before or at the time of the accident is insufficient, it would not be consistent with Texas law for this Court to conclude that the nearness of the Home Depot employee *after* Pena fell is sufficient to raise an issue of material fact.

### 2. Evidence of Conspicuity

■ While Texas precedent is clear that proximity evidence alone is insufficient to establish constructive notice, in an attempt to distinguish her situation from the cases discussed above, Plaintiff argues that the substance was also conspicuous. Paraphrasing her deposition testimony, Pena contends that the substance was conspicuous because it was "not confined to a small area; rather it spread out 7 to 8 feet." [Doc. No. 30 at 4]. However, Plaintiff selectively excludes relevant parts of the deposition in which she described the substance as encompassing an area "maybe about 9 inches and then—and then little drops" going away from where Plaintiff fell for "maybe about 7 to 8 feet." [Doc. No. 31 at 13]. A nine-inch puddle with little drops trailing off from the place where Plaintiff made contact with the floor is very different from a seven to eight foot puddle.

In any event, Pena contradicted herself when she subsequently testified that it was difficult to see the substance because it was the "same shade of gray as the floor," and that it was "impossible" to see it as she was walking. [Doc. No. 31 at 53–55]. Plaintiff admitted that she did not see the substance either before or immediately after she fell, and only discovered the substance when another customer pointed it out. [*See* Doc. No. 1, Ex. B–2 at 2–3].

In *Reece,* quite like Pena, the plaintiff fell in a puddle "about the size of a small- or medium-sized pizza [that] was to the side of the usual line snack-bar customers followed." *Reece,* 81 S.W.3d at 813. The court concluded that "there was no evidence that the spill was conspicuous—it was not large and consisted of a clear liquid on a light tile floor." *Id.* at 816. Similarly, a nine-inch puddle with small drops trickling off, which was the same color and shade as the floor, is not conspicuous.

Even accepting Plaintiff's evidence of conspicuity as presented, however, "there must be some proof of how long the hazard was there before liability can be imposed

on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.*

### 3. Evidence of Longevity

■ Pena admitted during deposition that she does not know how the substance came to be on the floor, how long it had been present before she fell, or whether Home Depot employees were aware of its presence prior to her fall. Plaintiff further admitted that she did not—and still does not—know what the substance was, nor did the two customers who witnessed her fall say what the substance was. There is therefore no indication in the summary judgment record of how long the hazardous substance was on the floor, nor is there evidence indicating where the substance may have come from to even hypothesize how long it was on the floor.

As emphasized above, the lynchpin of a constructive notice analysis is temporal evidence. Evidence that an employee was proximate to a conspicuous hazardous condition is insufficient if there is no evidence indicating how long the hazard existed. *See Reece,* 81 S.W.3d at 815 ("The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence."). In *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 102–03 (Tex.2000), the Supreme Court of Texas declined to limit the temporal element of premises liability in slip-and-fall cases, and disapproved the lower court's refusal to apply the "time-notice rule" simply because it might be impossible for the plaintiff to show knowledge. Thereafter, the Fifth Circuit reiterated the importance of temporal evidence when it reversed a district court's denial of a defendant's motion for judgment as a matter of law in a slip-and-fall premises liability case and stated that "the harsh reality ... is that if a plaintiff cannot prove facts to establish that it is more likely than not that the dangerous condition existed long enough that a proprietor should have known of its presence, there is simply no basis for recovery." *Threlkeld v. Total Petroleum, Inc.,* 211 F.3d 887, 893 (5th Cir.2000) (citing *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 938 (Tex.1998)).

Similarly, federal courts in Texas reviewing summary judgment motions substantially similar to the one before this Court have granted summary judgment when the plaintiff failed to produce sufficient temporal evidence. *See Sturdivant v. Target Corp.,* 464 F.Supp.2d 596, 602–03 (N.D.Tex.2006) (concluding that, as a matter of law, Target did not have a reasonable opportunity to discover the substance because, despite the evidence revealing the substance's source and its presence on the floor for a definite time, other evidence showed that the substance looked like the floor and was only on the floor for five minutes); *Yin v. Wal-Mart Stores Texas, L.P.,* No. B-09-26, 2009 WL 3753491, at *3 (S.D.Tex. Nov. 6, 2009) ("Plaintiff has failed to present any evidence that the hazardous condition existed for some definite length of time. The existence of guidelines for Wal-Mart employees for dealing with hazardous substances does not indicate the length of [sic] that a hazardous condition existed."); *Caballero v. Wal-Mart Stores Texas, L.L.C.,* No. H-06-1679, 2007 WL 2964747, at *3 (S.D.Tex. Oct. 10, 2007) ("Although Wal-Mart employees were in the area, given the low visibility of the water and the evidence that the water had been on the floor for at least ten seconds, no reasonable jury could conclude that Wal-Mart failed to exercise reasonable care by failing to discover and clean up the water.").

■ Here, Pena has failed to offer any evidence establishing that the substance

existed or was formed over any specific length of time, let alone a duration long enough to establish constructive notice. Plaintiff attempts to circumvent the complete lack of temporal evidence by offering circumstantial evidence concerning the *condition* of the spilled substance in order to suggest that it was on the floor long enough to give Defendant a reasonable opportunity to discover it. This is speculation at best. First, Plaintiff contends that the substance's "dark and gray" color suggests that it "had been on the floor long enough to be mixed with dirt." Plaintiff's own testimony contradicts this proposition. During her deposition, she explained that the reason the liquid substance was dark- and gray-colored was because it was an "oily" substance and, further, that the substance was the same color, and in fact the same shade, as the floor. In any event, if the substance was in fact an oily substance as Plaintiff asserts, it is hard to imagine what other color it would have been. One need not surmise that an oily substance must have been dirty to be "dark and gray colored." Furthermore, there is absolutely no evidence of the existence of any dirt to support Pena's proposition, which was raised for the first time in her Motion (where Plaintiff merely "suggests" the presence of dirt).

Even if there had been dirt in the substance, the Supreme Court of Texas in *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934 (Tex.1998), squarely rejected the same argument when presented with evidence of footprints and cart track marks in spilled macaroni salad. The Court there held that dirt in the macaroni cannot be evidence of the length of time the macaroni had been on the floor because the evidence could "no more support the inference that it accumulated dirt over a long period of time than it [could] support the opposite inference that the macaroni had just been dropped on the floor

and was quickly contaminated by customers and carts traversing the aisle." *Id.* at 937; *see also Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983) ("Corbin's testimony that the grapes lying around him were discolored and ruptured does not tend to prove that the grapes had been on the floor a sufficient time to impute knowledge of their location to Safeway. The aging and discoloration may just as likely have occurred before as after the grapes fell."). Here, the Court need not even go this far in the analysis because Plaintiff does not even testify that she or anyone else saw dirt: she merely attributes the dark color of the substance to dirt.

■ Second, Pena argues that the difficulty with which the employee had in removing the substance from the floor suggests that the substance had been there long enough to have permeated the floor. Elsewhere in her deposition, she contradicts herself when she reasoned that the difficulty in cleaning was due to the substance being "thick" and "oily." [Doc. No. 31 at 12; *see also* Doc. No. 30 at 3 ("She knew the substance was oily because ... the employee had a whole bunch of paper to—and he was cleaning it, he wiped it and wiped it and he couldn't—he couldn't wiped (sic) for more—he tried and tried and he couldn't get it off the floor. And it was thick.") ]. It was just as likely that it was the "thick" and "oily" nature of the substance that made it difficult to clean up as it was that the substance was there "long enough to have permeated the floor." Moreover, even assuming the substance had "permeated the floor," Pena offers no evidence regarding the amount of time the substance would have taken to permeate. There is simply no evidence of permeation other than Plaintiff's speculative "suggestion" that the difficulty in removing the substance equated to permeation, which

equated to the substance being on the floor for a long time.

■ Third, Plaintiff seems to suggest that Defendant's lack of documentation showing the condition of Aisle 46 for two and a half hours before the fall indicates that the substance had been on the floor for at least two and a half hours. Again, this is pure speculation. One cannot conclude that simply because Home Depot does not have a policy of logging every movement of every employee at all times of the day, the aisle where Plaintiff fell went unobserved for the two and a half hours before her fall. Moreover, even if the aisle did in fact go unobserved before Plaintiff fell, such evidence only serves to further support the lack of Defendant's actual knowledge of the condition posed by the spill. Finally, it still does not establish when the condition was created.

In *Wal–Mart Stores, Inc. v. Diaz,* 109 S.W.3d 584, 589 (Tex.App.-Fort Worth 2003, no pet.), the court held that, although Wal–Mart required its employees to periodically walk around and look for hazards, because there was "no evidence that an inspection of the aisle where Diaz fell did or did not occur at any time before the accident," it was impossible to determine if the spill had been on the floor for any length of time before the accident. Accordingly, the court held that there was insufficient evidence of Wal–Mart's actual or constructive knowledge of the spill. *Id.* Similarly, in the present case, the manager of Home Depot testified that it is Home Depot's policy to have employees "walk the aisles in the store for safety" "in the morning … and throughout their day," [Doc. No. 30, ex. 1 at 37]; however, there is no written evidence of whether or not an inspection of Aisle 46 occurred before Plaintiff fell. Without evidence indicating the length of time the substance had been on the floor, or even evidence indicating

where the substance came from in order to make a potential inference of the length of time it was on the floor, the fact that Home Depot does not have documentation regarding the condition of the aisle before Plaintiff fell is inconsequential.

### 4. Proximity, Conspicuity, and Longevity Evidence Combined

Pena attempts to distinguish the present case not only from *Reece,* but from all of the cases cited above, by arguing that the combined effect of all the facts alleged raises a material issue of fact for the jury. According to Plaintiff, *Reece* is not controlling here because Plaintiff has proffered more than mere proximity evidence by pointing to the conspicuity and longevity of the substance on the floor. Although she correctly points out that courts must analyze proximity, conspicuity, and longevity evidence as a whole and on a case-by-case basis, the record here is devoid of evidence supporting *any* one of these three prongs. The court in *Reece* held that evidence of conspicuity combined with longevity, or, alternatively, evidence of proximity combined with longevity, may be sufficient to support a claim of constructive knowledge. *See id.* at 816. However, "in either case, there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.* Here, Plaintiff's exclusive reliance on her own testimony simply does not raise a genuine fact issue as to the proximity of an employee to the spilled substance before the accident, the conspicuity of the substance, or, most importantly, the longevity of the substance on the floor before she fell.

The *Reece* court posed a hypothetical to guide the analysis of a combination of proximity, conspicuity, and longevity evidence:

[I]f the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time .in which a jury could find that the premises owner should reasonably have discovered it. Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition.

*Id.* Neither combination of evidence is present here. As discussed above, Pena testified that the substance was the same shade of gray as the floor of Home Depot, and that the substance encompassed about 9 inches, with drops trailing off for 7 to 8 feet. Plaintiff did not even notice the substance until someone else pointed it out after she had fallen. [*See* Doc. No. 1, Ex. B–2 at 2–3]. Additionally, there is no evidence other than mere speculation based on the timing of an employee's arrival at the scene sometime after Plaintiff's fall that an employee was proximate to the substance. Thus, there is no combination of proximity and conspicuity evidence that might make up for the lack of longevity evidence. Yet, even if there was sufficient proximity and conspicuity evidence, there still is simply no evidence of how long the substance was on the floor before she fell. Pena has not raised a fact issue as to how the substance got on the floor, how long it was on the floor, or whether an employee knew of its presence.

Even when considering all three prongs of constructive knowledge together, Plaintiff's unsubstantiated and speculative claims concerning the conspicuity and longevity of the substance on the floor, and the proximity of the Home Depot employee to the same, simply do not raise genuine fact issues to be put to a jury.

## IV. CONCLUSION

Considering all of the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to Defendant's constructive notice of the dangerous condition that allegedly caused Plaintiff's fall. While it may be, as the Fifth Circuit described it, a "harsh reality," this Court is bound to follow the established law of the State of Texas. Under that law, no reasonable jury could conclude that Home Depot failed to exercise reasonable care by failing to discover and remedy the hazardous condition. Since Pena has failed to raise an issue of material fact from which the jury could find in her favor, this Court **GRANTS** Defendant's Motion for Summary Judgment.